

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*United States Attorney's Office*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

July 2, 2025

**BY ECF**
The Honorable J. Paul Oetken
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    *United States v. Pierre Dadak*, 23 Cr. 125 (JPO)

Dear Judge Oetken:

      The Government respectfully submits this letter in advance of the sentencing of the defendant, Pierre Dadak, scheduled for July 9, 2025. As described in more detail below, the defendant undertook a sophisticated international fraud scheme which saw victims lose over $1 million dollars.

      In the Presentence Investigation Report ("PSR"), the Probation Office ("Probation") calculates a range pursuant to the United States Sentencing Guidelines (the "Guidelines") of 41 to 51 months' imprisonment, which is in line with parties' plea agreement (the "Guidelines Range"). For the reasons set forth below, the Government believes a Guidelines sentence is warranted here. Such a sentence would be sufficient but not greater than necessary to achieve the legitimate purposes of sentencing.

**A.    The Offense Conduct**

      The defendant's scheme was straightforward as it was brazen. In October 2021, he met a woman ("Victim-1") who, at the time, was dating a wealthy business owner. (PSR ¶ 13). At the time, Victim-1 understood that the defendant was an arms dealer with a checkered past but with connections (PSR ¶ 13). The defendant took advantage of this: he seized on Victim-1's obvious connections to wealth and her own fascination with his larger-than-life persona. He offered to introduce to a purported representative from the Harrods Department store over WhatsApp. (PSR ¶ 12). In reality, it was him. Posing as a sophisticated Harrods representative, the defendant enticed Victim-1 into great deals on luxury products. Eventually Victim-1 introduced another victim ("Victim-2") to the defendant and Victim-2 introduced her former boyfriend ("Victim-3," and collectively with Victim-1 and Victim-2, the "Victims") to the defendant as well. In sum, three different victims were introduced to the defendant before his scheme ran out of steam. And, in total, he was able to pump over $1 million out of the Victims.

Conning the Victims was relatively straightforward. But, the defendant employed a sophisticated scheme to be able to use and conceal his ties to the fraud proceeds. Using a German identity card—which appears to have been stolen from a German tourist in Ibiza—the defendant opened up the bank account which received all the fraud proceeds in this case (PSR ¶ 17). And with the fraud proceeds, the defendant supported his opulent lifestyle: paying a Shelby Roadster and buying a diamond-encrusted watch—which he had hand-delivered to him in Spain. A picture of the watch in front of a "Catch Me If You Can" graffiti painting at his villa in Ibiza is depicted below.



The purchase of the watch adds another darker layer to this saga. After purchasing this watch—and playing on his reputation as an arms dealer—the defendant threatened and cajoled the watchmaker into sending him $20,000 of fraud proceeds back. (PSR ¶ 18). Pasted below are texts the defendant sent his watchmaker—asking him to "Google him [the defendant]"— know that a Google search would turn up his links to arms dealing. (PSR ¶ 18).



The defendant was arrested in Spain at the request of U.S. authorities in June 2023 and he was officially extradited to the United States on March 14, 2025. On April 4, 2025, the defendant pled guilty to Count 1 (wire fraud) of a five-count Indictment which charged with him a range of fraud, money laundering, and identity theft offenses related to his scheme.

### C. The Applicable Guidelines Range

As noted above, the plea agreement and PSR calculate the Guidelines Range in the same fashion. The defendant's base offense level is 7 pursuant to U.S.S.G. § 2B1.1. Because the loss amount here was between $550,000 and $1.5 million, a fourteen-level increase is warranted pursuant to U.S.S.G. § 2B1.1(b)(1)(H). A two-level increase is warranted because a substantial part of the fraudulent scheme was committed from outside the United States. U.S.S.G. § 2B1.1(b)(10)(B). And a further two-level increase is warranted because offense involved the illicit possession or use of an authentication feature. U.S.S.G. § 2B1.1(b)(11)(A)(ii).

The defendant does not have criminal history which can be scored under the Guidelines. Accordingly, his criminal history category is I. And, as noted above, the Guidelines Range is 41 to 51 months' imprisonment.

### C. Applicable Law

The Sentencing Guidelines continue to provide important guidance to sentencing courts following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). Though they are advisory and not mandatory, the Sentencing Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall v. United States*, 552 U.S. 38, 46 (2007). It follows that district courts should treat the Sentencing Guidelines as the "starting point and the

initial benchmark" in sentencing proceedings. *Id.* at 49; *see also Booker*, 543 U.S. at 264 (explaining that district courts must "consult" the Sentencing Guidelines and "take them into account" when sentencing). Accordingly, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall*, 552 U.S. at 49.

After that calculation, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(l)-(7).  See Gall, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant;
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### D.    A Guidelines Sentence Is Appropriate in This Case

The Government respectfully submits that a Guidelines Sentence is appropriate in this case. The seriousness of the offense, the defendant's history and characteristics, and the need for general deterrence, in particular, call for a Guidelines Sentence.

*First*, a Guidelines Sentence is necessary to reflect the seriousness of the offense and provide just punishment.  The defendant's crimes were incredibly serious.  Through deceit and deception, the defendant abused the trust of his victims who gave them their funds because they believed the defendant's lies.  The defendant then misappropriated those funds for his own personal gain—allowing him to, among other things, obtain luxury vehicles and purchase and wear fine jewelry—without a care for any of his victims.

He also used threats of violence to help him keep some of the funds.  In other words, it wasn't just deceit and deception which fueled this scheme:  it was also the defendant's readiness to threaten violence to keep his ill-gotten gains.  This added dimension to the fraud perpetrated by the defendant makes this case all the more serious and militates towards a Guidelines Sentence.

*Second*, the defendant's history and characteristics call for a Guidelines Sentence. To start, there was no need other than pure greed for this defendant to commit this fraud. As the defendant himself admits to the Probation Office, he lived in a $2.5 million villa in Ibiza, Spain. (PSR ¶ 48). And it does not appear that this was the first time he used fraud and deception to enjoy the perks of a high-flying lifestyle. One of the things recovered during law enforcement's operations during his arrest in Spain was a Guinea-Bissau diplomatic passport. That passport, as publicly reported, was granted after he promised investments into that country.[1] And while the defendant proudly displayed a Guinea-Bissau credential at the front of his estate—which appears to be an effort to thwart an ongoing Spanish investigation—he never made his promised investments. Moreover, Spanish officials also appeared to have been investigating for using more fraud, deceit, and threats, including in a scheme, according to Europol, which linked him to the supply of "200,000 . . .AK-47 assault rifles."[2] To be sure, those investigations did not end in a conviction. But the Court can and should consider the credible allegations from Europol or—at the very least—the Guineau Bisseau episode, backed up by law enforcement's seizure here, in fashioning an appropriate sentence. This is not the first time where the defendant has used a toxic mix of fraud, deceit, and threats to fund his lavish lifestyle in Ibiza—he should be held to account for that with a Guidelines Sentence.

*Third*, and finally, a substantial term of imprisonment is also necessary to adequately deter other sophisticated criminals like the defendant from similar conduct. As the Court is aware, detecting sophisticated fraud operations like the defendant's is sometimes difficult. The investigation and prosecution of these offenses often times requires significant time and resources. For this reason, others similarly situated to the defendant may be convinced that the Government lacks the resources to prosecute their wrongdoing and that they will not face serious punishment for their crimes. A substantial sentence is therefore necessary to send a powerful message about the consequences of making easy cash by defrauding individuals who entrust them with their life savings.

---

[1] Adam Lusher, Billionaire suspected of fuelling civil war with Night Manager-style arms dealing 'threatened to put enemies in a glass jar,' The Independent (July 27, 2016), available at: https://www.independent.co.uk/news/world/europe/the-night-manager-arms-dealing-pierre-konrad-dadak-south-sudan-civil-war-ibiza-ak47-kalashnikov-polish-billionaire-arms-dealer-trafficker-ukrainian-model-europol-put-you-in-a-glass-jar-a7157951.html?callback=in&code=YJE3MJA4MTETY2Y5YI0ZMDYYLWEZNZCTY2FKMDM1NME4MJCY&state=a4fd55edc957486cb96659df5959ef1f (last visited on July 2, 2025).

[2] *Id.*

**E.     Conclusion**

      For the reasons set forth above, the Government respectfully requests that the Court impose a Guidelines sentence in this matter.

                              Respectfully Submitted,

                              DAMIAN WILLIAMS
                              United States Attorney

                   by:  __/s_____
                        Shiva H. Logarajah
                        Assistant United States Attorney
                        (212) 637-2272